STATE v. JOHNNY COTTLE, JAMES COTTLE AND EDGAR RENFROW.

(Filed 1 November, 1950.)

**Conspiracy § 6: Robbery § 3—**

> Evidence in this case tending to show that one defendant arranged to have the prosecuting witness stopped at a country store where all of the defendants, acting in concert, assaulted and robbed him of a sum of money, *is held* sufficient to be submitted to the jury on the charges of conspiracy to assault and rob, and with robbery.

APPEAL by defendants James Cottle and Edgar Renfrow from *Parker, J.,* at February Term, 1950, of SAMPSON.

Criminal prosecution upon a bill of indictment containing three counts charging: (1) That defendants James Cottle, Johnny Cottle and Edgar Renfrow "did unlawfully, willfully, feloniously combine, conspire, confederate and agree each and every one with the other, to assault, beat and wound one Will Fowler with deadly weapon, to wit: fists, clubs, and knives, and to steal, take and carry away cash money of the value of $85.00, the property of Will Fowler"; (2) That said defendants with force and arms . . . $85.00 cash money, the monies of Will Fowler, then and there being found, feloniously did steal, take and carry away; and (3) That said defendants did receive and have the said $85.00 cash money property of the said Will Fowler, well knowing it to have been feloniously stolen, taken and carried away, etc.

Upon the trial in Superior Court the State offered evidence tending to show, in the light most favorable to the State, the following: On 19 December, 1949, about 7:30 p.m., James Cottle, now a defendant here, went to the taxi stand of Will Fowler, a Negro, in the town of Clinton, Sampson County, N. C., and engaged Fowler to carry him to Turkey, also in that county. On the way, and as they were approaching Turkey, James Cottle said to Will Fowler that he had better stop and get some

change because he wanted to go about four miles out in the country, and would be unable to get change for a $100.00 bill out there. As Will Fowler stopped beside Hudson's store, James Cottle gave a $100.00 bill to him. Will Fowler went into the store and asked Mr. Hudson if he could change a $100.00 bill. He said he could not. Then Will Fowler pulled out his pocketbook to see if he could make change. He had $85.00 in it, and $12.00 and some pennies in his pocket. Looking around he saw Johnny Cottle, now a defendant here, and another fellow come in. Johnny "had eyes right on" Will. Will testified: "It looked as though something was going to take place so I get out of the station as fast as I can." When he stepped out of the store, Edgar Renfrow, now a defendant here, who had not been in the store, slipped up behind him and hit him from the back, and knocked him to his knees, saying 'What the G—— D—— H—— are you doing with my $100.00 bill?'" Will Fowler replied, "I haven't got your $100.00 bill, I just come here to get the $100.00 bill changed." When Will got up there was a man behind him and one at his head, and, quoting Will, "Mr. Renfrow got the $100.00 bill right then *hisself,* and then I lost my money there in the affray. Then I managed to get *aloose* and then they got me down again. Three or four of them were around there. ·They were Johnny, Edgar and this other fellow. I got loose . . . and ran . . . to the . . . side of the car . . . As I went to get in Mr. Jimmy sailed on me with both fists and began to beat me . . . When I got out they got me down there in the dirt, but I got away, and trotted toward Clinton. They chunked bottles and bricks. Then they caught me and said they were going to kill me, that is, Johnny Cottle, Jimmy Cottle and Edgar Renfrow. I got away from them and ran across the railroad . . . as I ran up to the store (Mr. Shipps') all three got me and said 'We are going to kill you tonight' . . . they were beating me at the time . . . I went on in the store and they come in behind me. I then left and went towards Clinton . . . I left my car . . . My glasses and hat were lost in the scuffle but I got them back later."

(The following was admitted in evidence against the Cottle boys, but not as to Renfrow.)

After the preliminary hearing, according to testimony of Will Fowler, the two Cottle boys came to see him at his taxi stand. Quoting Fowler: "Mr. Jimmy said, 'Will, I am sorry that this happened. We haven't got no harm against you and I would like to come over here and see if I couldn't get you to make this up.' I said 'Why did you boys treat me like that?' He said 'Well, I was at home that night,' that Renfrow came to his house and got him to come over and 'got me back to Turkey.'"

Will Fowler also testified: "Johnny and Mr. James come back the second time. I was uptown . . . in the sheriff's office. So he come in,

just James. He said he would like to make it up, and I asked him to make up what. He said he wanted to give me $85.00 back, pay for my suit . . . my watch . . . my lawyer's fee and doctor's bill, if he could get it made up . . . I have not seen him or either of them since."

The State also offered evidence tending to corroborate in material aspects the narrative of events as portrayed by the testimony of Will Fowler, and other evidence tending to show that Will Fowler is a man of good character.

On the other hand, the defendants, while not testifying in the case, offered evidence tending in material aspects to controvert the evidence offered by the State.

The court submitted the case to the jury on the first and second counts, but did not submit the third count. And as to the first count the court ruled that there is no evidence of any use of clubs or knives, nor of any deadly weapon.

Verdict: Guilty of conspiracy and guilty of stealing and taking away $85.00 cash money of Will Fowler, with force and arms as charged in the bill of indictment.

Judgment: That defendants Johnny Cottle, James Cottle and Edgar Renfrow, be confined to State's Prison for two (2) years and thirty (30) days, to be assigned to the State Highway and Public Works Commission.

Defendants James Cottle and Edgar Renfrow appeal to Supreme Court and assign error.

*Attorney-General McMullan and Assistant Attorney-General Rhodes for the State.*

*A. M. Britt for defendants, appellants.*

WINBORNE, J. When the evidence shown in the record on this appeal is considered in the light most favorable to the State, it appears to be sufficient to take the case to the jury, and to support a verdict of guilty as to each appealing defendant on each of the counts submitted to the jury.

It is manifest that the defendants were acting under an agreement to do the unlawful act charged. Hence the exception to the denial of defendants' motion for judgment as of nonsuit is without merit.

Also, the exception to the charge of the court fails to show error. The crimes charged were properly defined by the court, and the case was fairly presented to the jury.

And error is not made to otherwise appear.

Hence in the judgment below, there is

No error.